John F. KNIGHT, Jr., et al., Plaintiffs
and Plaintiffs, Intervenors,

v.

The STATE OF ALABAMA,
et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

The STATE OF ALABAMA,
et al., Defendants.

Civ. A. No. CV 83–M–1676.

United States District Court,
N.D. Alabama, S.D.

Oct. 2, 1992.

Donald V. Watkins, James U. Blacksher, Leslie Proll, Demetrius C. Newton, Birmingham, Ala., for plaintiffs.

Thomas W. Thagard, Jr., David R. Boyd, Robin G. Laurie, Balch & Bingham, Montgomery, Ala., Edward S. Allen, J. Richard Carrigan, M. Stanford Blanton, Balch & Bingham, Birmingham, Ala., Thomas D. Samford, III, Auburn, Ala., for Auburn University.

ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court pursuant to Auburn University's ("AU") submission of its new admissions policy for the 1993–94 school year. This Court, in its Remedial Decree of December 30, 1991, held AU's admission policy violated Title VI and the Fourteenth Amendment of the United States Constitution, and ordered AU to modify its current undergraduate admissions policy consistent with this Court's findings, and submit the new policy to the Court for its approval.

I. Background

AU's new admissions policy implements a sliding scale combining a student's ACT scores with a student's high school GPA. The requirements allow a higher grade point average to compensate for a lower ACT score in the following manner: if a student's ACT score is 16 then the student's GPA must be 3.0; if a student's ACT score is 17, then the student's GPA must be 2.5; if a student's ACT score is 18, then the student's GPA must be 2.0.

AU also plans the implementation of a retention program that would involve "early and regular intervention to assist freshmen in successfully making the transition from high school to a college-level academic program." AU's Report No. 2 Made in Response to This Court's Remedial Decree of December 27, 1991, at 1.

AU argues that their new admissions policy is consistent with the Court's prior order. AU notes that the Court did not require AU to lower its standards to accommodate high school students ill-prepared to do college level work, Findings ¶ 740, and that even the most modest ACT requirements would have a substantial, del-

eterious impact on black applicants. *Id.* at ¶ 713. AU also states that it has adopted a sliding scale combining a student's ACT score with a student's high school GPA, which the Court noted as a means of reducing adverse impact on black applicants while maintaining the goal of identifying applicants who have a real chance for academic success. *Id.* at ¶ 717. Finally, AU contends that its sliding scale is similar to those of the University of Alabama's ("UA") and the University of Alabama at Birmingham's ("UAB"), which the Court approved. *Id.* at ¶¶ 731–733.

AU claims that its new admissions policy increases the number of black students who qualify for admission to AU by 36%. AU Response to Knight Objections to AU Rep. No. 2, at p. 3. AU states that it recognizes that its new admissions policy also disproportionately increases the number of black students who do not qualify for admissions to AU. However, AU notes that because black students score lower than white students on the ACT in Alabama, any use of the ACT will proportionately disqualify more black students than white students.

Finally, AU argues that its new admissions policy is consistent with the United States Supreme Court's recent opinion in *United States v. Fordice*, — U.S. —, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992). Moreover, AU contends that regardless of the consistency of its new admissions policy with *Fordice*, because the Knight Plaintiffs raise on appeal the "elimination of vestiges in the historically white universities ("HWUs")," this Court has no jurisdiction to modify its order on this issue to respond to *Fordice*.

The Knight Plaintiffs raise several objections to AU's new admissions policy. First, the Plaintiffs argue that AU's new admissions policy does not comply with this Court's Remedial Decree of December 30, 1991. The Plaintiffs contend that this Court's Remedial Decree does not allow for an admissions policy which has a disproportionate impact on black applicants, and that AU's new admissions policy does have a disproportionate impact on black students

because it disqualifies black high school students in Alabama at 2.73 times the rate of white high school students in Alabama. Knight Plaintiffs' Objections to AU Report No. 2, at ¶ 1.

Second, the Knight Plaintiffs argue that to the extent that the Court's Remedial Decree allows some disproportionate impact by allowing the use of the ACT for admissions purposes, then the Court must modify its Remedial Decree to conform with *Fordice*, which Plaintiffs contend does not allow for the use of the ACT in determining admissions because it has a disproportionate impact on black high school students in Alabama.

The Knight Plaintiffs state that *Fordice* requires that if a state perpetuates policies traceable to its prior system that continue to have segregative effects, which have no sound educational basis, and can practicably be eliminated, then the state must eliminate those policies. The Knight Plaintiffs argue that AU's and the other HWUs' tougher admissions policies continue to have segregative effects by denying admissions to a disproportionate number of black high school students in Alabama. Knight Plaintiffs Objections to AU Report No. 2, at ¶ 10. Furthermore, the Knight Plaintiffs claim that AU has no sound educational basis for its new admissions policy because *Fordice* found that differing missions requirements were not a sound educational basis for differing admissions standards. Therefore, the Knight Plaintiffs ask the Court, in light of *Fordice*, to order AU to adopt the same admissions policy as Alabama State University ("ASU") and Alabama A & M University ("AAMU") and to modify their academic programs and support services to respond to the needs of unprepared students.

## II. Discussion

■ The Court finds that AU's new admissions policy is acceptable. The Court first notes that AU's new admissions policy is consistent with this Court's Remedial Decree. In its Remedial Decree, the Court found that AU's prior admissions policy requiring a score of 18 on the ACT and a

high school GPA of 2.0, violated Title VI and the Fourteenth Amendment of the United States Constitution because AU had no sound educational reason for not having a well conceived conditional admissions policy or a sliding scale combining a student's score on the ACT and the student's high school GPA, which allows a higher high school GPA to compensate for a lower ACT score. Findings at ¶¶ 727–740.

The Court directed AU to review its admissions policy and submit for the Court's review a new admissions policy consistent with this Court's Remedial Decree. The Court noted that it would not require AU to lower its standards, but also pointed out to AU, the Court's approval of the admissions policies of the University of Alabama ("UA") and the University of Alabama at Birmingham ("UAB").[1] *Id.* at ¶¶ 733.

The Court held that the use of the ACT by the state universities in Alabama, except for the use of the ACT by AU, did not violate the laws or Constitution of the United States. *Id.* at ¶ 714. The Court held that the ACT is a accurate and nondiscriminatory tool of universities to evaluate freshman applicants. The Court recognized that there are several nondiscriminatory rationales for using the ACT in determining college admissions, including to find students who have a real chance for academic success and limiting the number of individuals eligible for admission. *Id.* at ¶ 717. The Court also recognized that the ACT has a negative impact on the opportunity of black students to attend some of Alabama's HWUs because in Alabama black high school students score lower on

the ACT than do white high school students. *Id.* at ¶¶ 712–713. However, the Court found that this negative impact alone does not render the use of the ACT illegal or unconstitutional because of the legitimate nondiscriminatory uses of the ACT in college admissions. *Id.* at ¶¶ 714–726.

AU's new admissions policy adopting a sliding scale similar to UA's is acceptable to this Court because the adoption of a sliding scale increases the number of black students eligible for admission to AU by 36%. AU's Response to Knight Objections to AU Report No. 2, at p. 3. However, the Court notes that AU's sliding scale contains a higher criteria than UA's sliding scale,[2] and that AU has not seen fit to implement a well-developed conditional admissions policy. Therefore, in the absence of such action, the Court will closely monitor the impact of AU's new admissions policy. The Court orders AU to submit to this Court in one year a report stating the number of applicants who were denied admission based upon the new admissions policy. The report should contain the race and sex of those not admitted because of failure to meet the new admissions requirements. AU must keep proper records for inspection and in the report must submit the actual statistics to the Court.

The Court rejects the Knight Plaintiffs' contention that AU's new admissions policy is unacceptable because AU's new admissions policy disqualifies 2.73 as many black high school students in Alabama as white high school students. As pointed out above, the new policy does increase the number of black high school students in

---

1. The Court noted its approval of UA's sliding scale, which combines ACT scores and high school GPAs in the following manner: A score of 15 or below on the ACT renders a freshman applicant unacceptable for regular admissions; if the ACT score is between 16 and 20, the GPA must be between 2.7 to 2.1 respectively. Findings ¶ 650. The Court also noted its approval of UABs comprehensive conditional acceptance program. *Id.* at ¶¶ 680–684.

2. UA's admissions policy uses a sliding scale, which combines ACT scores and high school GPAs in the following manner: if the ACT score is between 16 and 20, the GPA must be between 2.7 to 2.1 respectively. Findings at ¶ 650.

Whereas, AU's new admissions policy implements a sliding scale combining a student's ACT scores with a student's high school GPA in the following manner: if a student's ACT score is 16 then the student's GPA must be 3.0; if a student's ACT score is 17, then the student's GPA must be 2.5; if a student's ACT score is 18, then the student's GPA must be 2.0.

Thus, AU's admissions policy requires a higher high school GPA than UA's to compensate for the same ACT score. For example, if a student scores 16 on the ACT, then to gain admission to UA a student must only have a GPA of 2.7, but to gain admission to AU a student must have a GPA of 3.0.

Alabama who are eligible for admission to AU by 36%. Moreover, because in Alabama black high school students score lower on the ACT than white high school students, the use of any ACT score as a cut off for admissions will disqualify a greater proportion of black students than white students. A greater proportion of black students will always be disqualified because black students make up a greater proportion of the lower ACT scores. By way of example, if the average score on a test is 90 for white students and 80 for black students, the black students will make up a larger proportion of the persons who score below 80 than they do of those who score below 90, a larger proportion scoring below 70 than 80, and so on. Therefore, lowering a cut score will always disqualify a higher proportion of the group scoring lower in comparison to the group scoring higher.

■ The Court also rejects the Knight Plaintiffs' request that this Court modify its Remedial Decree to comply with the United States Supreme Court's subsequent opinion in *Fordice*. The Court notes that it is without jurisdiction to modify its Remedial Decree because the Knight Plaintiffs have appealed the issue of the elimination of vestiges of discrimination in the HWUs. The filing of an appeal divests the district court of control over aspects of the case involved in the appeal. *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 378–79, 105 S.Ct. 1327, 1330–31, 84 L.Ed.2d 274 (1985); *Showtime v. Covered Bridge Condominium Ass'n*, 895 F.2d 711, 713 (11th Cir.1990).

Moreover, the Court reads its Remedial Decree as consistent with the Supreme Court's holding in *Fordice*. In *Fordice*, the Supreme Court held that:

> If the State perpetuates policies and practices traceable to its prior system that continue to have segregative effects—whether by influencing student enrollment decisions or by fostering desegregation in other facets of the university system—and such policies are without sound educational justification, and can be practicably eliminated, the State

has not satisfied its burden of proving that it has dismantled its prior system. [— U.S. at ——, 112 S.Ct. at 2747,] 120 L.Ed.2d at 595.

The Supreme Court also specifically found two "Constitutionally problematic" uses of the ACT by the State of Mississippi in its undergraduate college admissions. First, the Supreme Court found that the district court did not adequately justify, in terms of sound educational policy, the need for differential entrance requirements, including differential minimum ACT score requirements between universities with dissimilar programmatic missions.

However, this Court made very specific findings about the sound educational policy reasons for differential entrance requirements for universities with dissimilar programmatic missions. *See* Findings at ¶¶ 608–740. This Court noted that:

> [A]dmission standards necessarily reflect the mission differentiation and academic function among various institutions. Without this differentiation, higher educations would become an amorphus assemblage of institutions producing students as the lowest common denominator. It is not the function of the courts to establish the academic mission for any particular institution. In the absence of an impermissible impact on students, this Court will not usurp the traditional role of the university to establish the standards under which those who wish to enroll are admitted. *Id.* at ¶¶ 717–18.

Moreover, this Court notes that implementing Plaintiffs' request to require the HWUs, including AU, to adopt the same undergraduate admissions standards as those of ASU and AAMU, which have essentially open admissions, *Id.* at ¶ 644, would not necessarily increase the number of black students attending the HWUs in Alabama because there would be a substantial increase in the number of white students who would be eligible for admission as well. *Id.* at ¶ 716. Thus, sound educational policy reasons exist for differential entrance requirements for universities with dissimilar programmatic missions, but few sound reasons exist for requiring

identical admission standards for all state universities.

Second, the Supreme Court found that no sound educational reason existed for the State of Mississippi's admissions policy which considers only ACT scores without also considering high school GPAs. Of course, this is exactly what this Court found in this case. *Id.* at ¶¶ 727–40. Therefore, this Court finds that its Order is consistent with the Supreme Court's opinion in *Fordice.*

### III. Conclusion

Accordingly, based on the above the Court APPROVES Auburn University's new admissions policy for the 1993–94 school year. The Court also ORDERS Auburn University to submit to this Court in one year a report on the impact of its new admissions policy which conforms with the requirement set out above.

IT IS SO ORDERED.